May it please the Court, I am Michael Daw. I am on behalf of the appellants Vivian and Larry Schwartz, and with the Court's permission, I'd like to reserve a few minutes for rebuttal. If you'd like, just keep track of your time, please. I will do so. The trial court, it's our position that the trial court got it right on the trial court's initial order. It's also our position, as we've stated in our reply brief, that there's not a lot of disagreement between the two sides yet. Obviously, there's disagreement as to the appropriate conclusion, but on the facts, the material facts, and on really the crux of the issue. In our view, the crux of the issue is the interpretation of an exclusion. So the first order, I think you perhaps overlooked the exclusion. I'm sorry? I don't think the first order addressed the exclusion, right? The first order actually did address the exclusion. Well, I don't want to bind myself here, but I think the Court basically rejected the argument that, I honestly... At any rate, the second order didn't overlook it, so... No, I reviewed the NOFO anyway. You do review the NOFO. What's your best run at... I didn't mean to interrupt you, I'm sorry. That's right. What's your best argument that the exclusion does not apply? The best argument is that the manner in which the trial court interpreted the exclusion on the second order, the order granting summary judgment, in effect, made that exclusion say something it did not say. It made that exclusion say, property ever owned by the insured. So it added the word ever, in effect, by saying, since the Schwartzes owned the property at one point. I understand that argument, and I think it would be right if that's all there was. If the damage occurs when it's no longer owned property, then the question, it seems to me, shifts to whether the liability policy ensures the policyholder against claims by the third party to whom the damage occurred. And there I have trouble with it, because it looks like the policy was canceled, and it doesn't have a tail. It doesn't have... That's correct, Your Honor. And since it doesn't have a tail, it looks like they're in the position of somebody who used to have an insurance policy but doesn't when the occurrence and the claim take place. But I think that Montrose 2, Aerojet 2, and the handful of other cases that we cited answer that question, Your Honor. And I think that Montrose just helps you on the occurrence. The anti-Montrose argument, I guess you could say, was this all happened before you sold the house, so it's all owned property exclusion stuff. Right. That's the argument. But here what you have is they did wrong while they owned the house. Correct. But there was a subsequent occurrence under Montrose whenever the roof leaked after the new people bought the house. I would take issue with the words subsequent occurrence. It's not a subsequent occurrence. If it never leaked again after the Schwartzes sold the house, I don't think the Ragsdales would have had anything to sue the Schwartzes about. Well, if it never leaked again but then the Ragsdales did a remodel and found extensive mold, which they did. Okay. And they might have a deception of fraud or negligent misrepresentation or failure to disclose or something. Sure. And our position is the failure to disclose is not the issue in this case. I think the panel probably understands that. But the Schwartzes negligence, which was separately analyzed by the arbitrator and became the basis of the case. We have no problem with that part of your argument. I mean, I was thinking of a hypothetical, actually. If you don't get your septic tank cleaned out in a place where, well, there's permafrost, so it doesn't drain, there'll be no problem. The year after. I mean, no problem the second year after. But maybe the third or fourth or fifth year, all the toilets will start overflowing. And if you sell the house after a year or two years, your negligence won't have caused any harm whatsoever in not getting the septic tank pumped. Okay. We have a difference here. It will have caused no damage whatsoever. And it wouldn't cause any damage if, for the first year that the new owner bought it, probably. But by the second year the new owner has the house, it's going to cause damage. So you don't have your negligence action. You don't have the four elements until the new owner has owned the house for a year. But we have it here. If you've canceled, so under Monroe's chemical, that would be good if there was still an insurance policy. But ordinarily there would be no insurance policy because the old owner would have canceled this fire insurance policy. He would have been paying premiums on it. And that's where usually the liability rider is. He would have canceled it when he sold the house. In your Honor's example, the backing up of the toilets, the issue would then become, is that a unique, a subsequent occurrence? Or is that part of a continuing and progressive occurrence, which Montreaux is to? Nothing goes wrong for the first year or two. In that case, your tort of negligence doesn't exist. No tort can lie until you have the damages. Well, in this case we have the arbitrator finding expressly that the fact that the Schwartzes had disclosed that they had repaired the property gave rise to their liability and negligence. The arbitrator expressly found when you Schwartzes disclosed to this buyer that you had repaired the property, you then assumed a duty in negligence, which you failed to honor. And if we go back to the policy, the analysis before we even ask the question about the exclusion. The exclusion doesn't even get considered unless and until we have met our burden of proving the basics. And that is, was there an occurrence? And the occurrence is the continuing or progressive exposure to the generally same harmful conditions. So that's the key here. The Schwartzes exposed this property to those harmful conditions while they owned it. And then once the property no longer belonged to the Schwartzes, those same continuing and progressive damages continue to occur. And what Montreaux's and all the progeny tell us, the first policy, the second policy, the third policy, every policy on the risk at that time up until the point of discovery, which is after the fact. Nonetheless, all apply to all the damages. The Montreaux's say that the canceled policy or the old policy still applies. Oh, yes. And is there an analogy to the owned property exclusion in Montreaux's? I don't think there's any owned property issue in Montreaux's. No, I don't believe so. I don't think there was. But who knows? I mean, there are many post-Montreaux's cases that apply this rule. But I think if we- That's really key, isn't it? Clinical. Well, no, I mean about the no owned property difficulty. Because the first period in this case, there's no coverage, right, because they own the property. And then after they sold the property, they no longer had a policy. Okay. But here's the way I would go about it. The analysis is this. Was there an occurrence of property damage? That's our burden, our sole burden. So, you ask, was there continuing and repeated exposure to the same generally harmful conditions? Yes. Was there property damage? Yes. Okay. So, you've got coverage. The property? Are we going to ask whether they own the property or we're just going on coverage now? You're just on coverage? No, I want you to defend as well because it's the possibility of these things on the- So, you haven't come to the exclusion yet is what I meant. No, exactly. Okay. So, you answer those two questions. And then you pose a discreet question. The owned property exclusion. Does it apply in all worlds to exclude the damage to this property, even once the property was no longer owned by the insured? So, then you look. What are the words of the owned property exclusion saying? They say this applies to property owned by the insured, this exclusion. Ergo, no coverage while you own the property. But the second the Schwartz's no longer own the property, their negligence is continuing to damage the property, and it's property owned by Ragsdale. So, the question becomes, look at the language of the exclusion. And the law is obviously very clear. We interpret exclusions in a certain way. We do so under the rules of insurance policy exclusion interpretation, and that is strict. The problem I'm having with that argument is that when I look at the definition section of the policy, it says occurrence means an accident including continuous or repeated exposure to substantial and, in general, harmful conditions, which results during the policy period in property damage. No, that's exactly right. And the problem is it's not during the policy period when the Ragsdale's own the house and its own property when the Schwartz's own the house. That's my problem. I'm glad you brought that language up, John, because obviously that points to an important question. But here the answer to that question when you're going through this three-step analysis, to reprove occurrence, to reprove or is it possible that there was an occurrence, is it possible there was property damage, then there was property damage to this structure that the Schwartz's didn't know about during their ownership. So, that provision of occurrence is satisfied. Then you have to ask a separate and discrete question. Let's go to the owned property exclusion. Does it apply? If Kemper had added one word, property ever owned by the insured, then that exclusion would accomplish the goal that Kemper seeks to achieve, and that is to exclude all coverage. It doesn't say that. Plainly, it does not. The only way you can make that exclusion preclude coverage is if you implicitly add the word ever. You're over time. We've taken you over, so we're going to stop you there. Okay. And I'll put two more minutes on the clock when you come back. Thank you very much. So, for planning purposes, you've got two minutes. Thank you. You bet. Good morning. Good morning, Your Honor. Please report. Todd Bundell on behalf of Kemper Independence Insurance Company. There are many cases that actually adopt the very reasoning that Your Honor applied here, which is to say that the Devon footnote 7 is the classic example. If the property damage here occurred during the policy period, the owned property exclusion applies. If the property damage occurred outside the policy period, well, then there's no coverage. Devon says that very clearly in footnote 7. There's the unpublished Zaboski decision, lots of district court decisions. No, Devon's published. It's a footnote 7. Devon is pre-monetarized, but it is a published decision, I believe. I'm just looking at page 36 through about 38 of your brief. Well, you mentioned that other cases have followed. Are you referring to Newman, Chaney, these cases here? Right. So, Devon is 6 Calab, 4th, 1149. So, I think the mistake... That's a Supreme Court order. That's a California Court of Appeals decision. That's a Court of Appeals decision. Zabkowski. Zabkowski is the unpublished decision that cites Devon with approval and follows the same basic analysis. And then there's, of course, all the district court cases, the cases from other jurisdictions that persuasively say this same thing. Now, the Bipartisan Council tries to get around this by, I think, misapplying the Montrose decision. And what happens is... Well, he's got part of Montrose. I think Montrose is enough to avoid the owned property exclusion because something bad happens when the Braggsales own the house, even though the bad maintenance by Schwartzes may have caused it under Montrose. I think it's pretty clear that the Schwartzes can still be responsible for it when the ring comes through the leaks during the Braggsales ownership. I think Montrose clearly gets that far. Attentionally covered. So, here, it's important to remember that Montrose is a trigger. It's a case. It's not a coverage case. It doesn't say anything about coverage. In fact, the court goes to great lengths to say, we are not deciding coverage in this case. We're deciding whether a policy is triggered. And what the court says is... Is it for purposes of duty to defend? For purposes of the application of the policy. In this case, because it turns on a legal question, as we say in our briefs, the duty to defend and the duty to indemnify are the same. So, in some cases, the duty to defend can be broader, but not here. There's a distinction between triggering and coverage. Right. So, it triggers the potential that the policy provides coverage. And then you have to answer the coverage question. So, what? If it's triggered, then the duty to defend applies. But for coverage, that's a duty to indemnify. You still have to have coverage in order to have a duty to defend. When coverage is purely a legal question, right, which it is here. So, trigger is, if there's an injury during the policy period, that policy has the potential to provide coverage. And then you have to look at the terms of the policy to determine coverage. So, here, what is the occurrence that they claim triggered the policy? And what they're claiming is that there was an injury during the policy period, right, that triggered the possible application of this policy. If that's the case, well, then you have the owned property exclusion that applies. Because it's owned at the time that the injury that triggered the policy. And, therefore, the owned property exclusion applies. The liability of the exposure didn't really happen during the policy period, right? By definition, the liability exposure, which is what we're talking about, gets triggered when they sell. Right. So, what they're trying to do is say that this later injury is what, but that later injury is outside the policy period. So, it's true. It seems to be. I just feel, kind of back to it. I think about this a little bit differently. It depends on the cause of action, right? If the cause of action is failure to disclose, then that's happened already. If the cause of action is, or, I mean, at least when this hypothetical person sells. We're talking about an arbitration ruling that determined that it was negligence that caused these damages, right? So, that's already happened during the policy period. I mean, during the ownership period. That depends. So, we have a second argument that says that it's not really negligence here. It's failure to disclose. But, taking your point, if there's coverage for that negligence when that negligence occurred, then it's true that you would pay for damages that arise after expiration of the policy. Right? But, you still have to have a covered loss. You have to have a covered loss during the policy period. And, that's the problem they're having here. They don't have a covered loss during the policy period. And, they want to say, once the policy expired, it somehow turns into a covered loss. They don't have a covered loss during the policy period because it's not a property insurance policy. We're talking about liability coverage. That's correct. And, because the injury that they're claiming, which is this damage to their own home, right, is not covered because there's no property exclusion. I want to think about the policy. Excuse me. You're talking about negligence, right? Well, if we're talking about negligence or failure to disclose, both those things are within the policy period. The property damage that they're alleging, because you have to have a trigger of the. . . You just conflated what I was trying to separate. I'm sorry. That's okay. I was up with you when you were talking about negligence because that occurred if it occurred during. . . while repairs were being made while they owned the property. Right. Right. And then, you know, theoretically, they didn't. . . The exposure for liability for any failure to disclose didn't happen until closing. Fair enough. So, if it's. . . In the policy period. So, if it's outside the. . . If the trigger is outside the policy period, then there's no coverage because it's outside the policy period. If the trigger and injury is within the policy period, then there's no coverage because of the owned property exclusion. That's the definite point, right? But it is a separate analysis. Sure. My score sheet to both of your benefits. It matters to me what underlying liability is, you know, that we're talking about. And it all circles back to Judge Kleinfeld's point of being you have to get all the elements of the court. Right. Right. You were trying to ask that question. I just got lost on something. What happened to the duty to defend on the failure to disclose claim? So, you only have the duty to defend. So, a duty to defend and the duty to identify. Did they have coverage for failure to disclose? If they have. . . If the policy is triggered. . . In other words, the failure to disclose occurs outside the policy period, so no. Right? The argument on failure to disclose is just the same as the argument on the leaky roof. Well, in addition, under this court safe co-analysis, the failure to disclose and this misrepresentation is not an occurrence under the policy. So, there's two separate sort of ways to get out of the policy. And it's not an accident. That's right. So, I want to stress the policy implications of their reading of this provision. And that is, as a homeowner, I know I have some leaks in my house, right? It's going to cost $400,000 to fix these leaks if I do it correctly. And I'm not going to have first-party property damage coverage for that because there's all sorts of exclusions. So, or I can hire an unlicensed contractor to come in and patch it up on the cheap. Patch it up and hopefully it holds and there's nothing wrong. But if it doesn't hold and the purchaser of the property. . . That's the implications of their argument. That I can fund an uncovered property damage claim for these leaky. . . At that point, it would if they had a tail. If they had a tail or some provision that allowed this to expand, then it's possible. There are a lot of kinds of policy where you buy a tail. For example, I think most lawyer malpractice policies, they sell tails. Sure, for a certain time period, right? But they don't have a tail here. I haven't sold lawyers after his death. So. . . Your hypothetical would certainly sit a lot better with me if we could talk about a hypothetical. Because I think you're attributing an intent in 20-20 hindsight here where it may not be fairly attributable. This is really important to the folks who are involved. To be clear, I'm not attributing that intent to them. I'm saying that in some future action, that's how it would be. That's what the policy implications of the law would be. In this case, we're talking about nodding the intentional conduct. Now that I've chastised you, if you can go back and run through your hypothetical, we are all ears. The hypothetical is still the same. Use different numbers. I don't mean to apply intent from the source. As I say, if their rule applies, and I'm a homeowner in the future, and I have a leaky swimming pool that's causing property damage during the time I own the home, then I know I don't have to fix it properly because it costs a lot of money. I can patch it up. Hopefully it works, right? I'm going to try to fix it. But if it doesn't work, I'm not going to spend the $400,000 to fix it. Because if it doesn't, then later I'll have third-party liability damage, even though I didn't have first-party property damage. And that is the whole point of this loan property exclusion. I'm not sure I understand that to be the whole point. It seems as though you're making the moral hazard argument, and it's, in this context, more of a policy argument for why the words should be construed a particular way. But we know they have to be construed contra pro forendum, so I'm really interested more in the words. Sure. And so it's also the other implication here is the insurance companies have put this own property exclusion into the policy and have relied on 30 years of cases interpreting it, like Devin interpreted it, to preclude coverage in these very circumstances. And they've priced their policies accordingly, right? So if all of a sudden they're required to provide coverage that they've never provided before, that the own property exclusion is intended to preclude, the people that are harmed by that are going to be future insurers whose policy rates are going to have to be readjusted to account for this risk that the insurer never intended to be on the hook for, because that was the point of including the own property exclusion in the first instance. And I see I'm out of time. If you have any other questions, I'm happy to. No further questions. Thank you for your argument. You have two minutes, sir. Thank you. I would like to pose a different hypothetical. Let's assume the Schwartzes' swimming pool leaked, and the water permeated and damaged their neighbor's home. The Schwartzes then sell their policy. Just client-fell, this is to your question, but now there's no longer any policy covering the Schwartzes. They've sold their home three years later. Their neighbor's home has a horrific problem with damage. And this is Stonewall, or like Stonewall, which is a California Supreme case, one of the projects. Should the Schwartzes be denied coverage as a matter of policy because they've damaged their neighbor's home? It was being damaged during their policy. That damage was latent. It was continuing. It was progressive. They've sold their home. They've moved on. Two years later, they get a claim against them for $500,000. Who should bear the burden of the liability risk which ensured the Schwartzes? Under Montrose 2 and Progeny, that has been decided. If you've got a continuing injury, then the temporal frame of your coverage expands. It's going to expand decades. How do you get it out of the words of the policy? I get it out of Montrose 2. Well, wait a minute before you even get to Montrose. Right. You've got to have an insurance policy, and the insurance policy has words in it. Right. So I want to know how we reach the conclusion that you're urging based on the words of this particular policy. The definition of occurrence, which your Honor read earlier, and there was property damage during the policy period. That's a fact. That's a fact. So I'm disputing it. You're hypo with the swimming pool. It's latent. Nobody knows about it. Exactly. Okay. The damage was to another person's property. Understood. I feel it, but my argument with that exclusion wouldn't apply. You're absolutely right, Your Honor. So my point is this. Let me just follow up with Judge Bumate. I think I have the same question. If I could just follow up on your point. Sure. Well, that's the swimming pool, if you would. If the damage is to the neighbor, right? Right. That's not owned property. Right. But during that policy period for the owners of the swimming pool.  That, would they have had coverage? Because we're only talking about liability. Sure, they would have had coverage. If you mean if the neighbor's house was discovered to damage during before. I think they would have only liability coverage for, for Judge Bumate's question, you know, for the next-door neighbor, because that's liability. And the damaged property is owned by the neighbors. Right. But not any coverage for their own premises, because this isn't a property thing. Well, but we don't know that, because counsel referred to, you know, whether you're covered under a property policy or not, and Schwartz's wouldn't have been covered because there's all these exclusions. That's not in the record anywhere. We don't know that. We don't know they wouldn't have been covered under their first-party coverage, but that's, that's not an issue. But I don't think anybody can rely on the assumption that they wouldn't, that the Schwartz's wouldn't have been covered for their own damage under a property policy, because we don't have that anywhere in this record. And we're only talking about liability coverage. Right. I interrupted your hypothetical. Well, the hypothetical is this. The Schwartz's would, ironically, get coverage, notwithstanding the fact that their policy had expired. And that coverage could be five years, ten years down the road. If that neighbor proved your pool leaked while you owned the property, you damaged our property, it was latent, then the Schwartz's could come back to Kemper and say, you owe us coverage. And Marshalls, too, et cetera, say, yes, you do. All carriers are on the risk. So, as a public policy, this is an insurance company. People buy liability insurance to protect themselves, to protect their retirements, to protect their major assets. There's no public policy here that benefits an insurer who is attempting to avoid coverage. What's the triggering effect for the damage here? The triggering on the arbitration award, it was the negligence of the Schwartz's in engaging in the three sets of repairs. And the arbitrator expressly found that in finding duty, which is a legal issue, of course, for negligence, when the Schwartz's disclosed their prior repairs, they effectively undertook a duty to have done those repairs properly. Thank you. That was the express finding. Submit it. Thank you very much. Thank you both so very much for your arguments today. We'll take the case under advisement, and we'll go on to the last case on the calendar, which is.
judges: KLEINFELD, CHRISTEN, BUMATAY